BURDETTE v. UNIVERSAL CLEANSER & MFG. CO.
et al.

No. 2559.   Decided April 2, 1914 (140 Pac. 119).

1. CORPORATIONS—CONTRACTS OF PROMOTERS—RIGHT TO STOCK. A contract of sale of an undivided one-tenth interest in a business and the property used therein stipulated that a corporation should be formed to take over the business and property, and that the buyer should receive one-tenth of the stock of the corporation. The seller alone organized the corporation, and the articles of incorporation provided that a specified number of shares should be retained for the benefit of the corporation. The buyer accepted one-tenth of the balance of the stock. *Held*, that the buyer, on accepting the stock, became a stockholder, and consented to the articles of incorporation, and could not compel the issuance to himself of any part of the shares set apart for the benefit of the corporation. (Page 277.)

2. CORPORATIONS—STOCKHOLDERS—RIGHTS OF STOCKHOLDERS. A stockholder cannot claim a segregation of his interest in the corporate property, and the only way by which a segregation may take place is by declaring a dividend on profits or a stock dividend, and in either case each stockholder receives in proportion to the number of shares he holds, and a stockholder entitled under contract to a specific part of the stock of a corporation cannot compel the issuance to himself of any part of the stock set apart for the benefit of the corporation. (Page 282.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by Joseph Burdette against the Universal Cleanser & Manufacturing Company et al.

Judgment for plaintiff against the defendant, John Peterson rendered after a dismissal of the action as against the other defendants. Defendant, John Peterson, appeals.

MODIFIED AND AFFIRMED.

*M. E. Wilson* and *A. E. Walton* for appellant.

*Stewart, Stewart & Alexander* for respondents.

### RESPONDENT'S POINTS.

While it has been said to be the general rule that courts will not ordinarily enforce specific performance of contracts relating wholly to personal property, the weight of authority seems to be that this rule applies to personal property readily marketable, the value of which is commonly and publicly known, or very easily ascertainable. The rule does not apply to stocks or bonds of uncertain value or difficult of ascertainment. Contracts relating to stocks in corporations not listed and not generally known and having no market value or a market value difficult of ascertainment, are specifically enforced. (*Treasurer v. Com'l Coal Mg. Co.,* 23 Cal. 391; *Fleishman v. Woods,* 135 Cal. 256, 67 Pac. 276; *Safford v. Barber,* 70 Atl. 371; *Sherman v. Herr* [Pa.] 69 Atl. Rep. 899; 2 Pomeroy on Equitable Remedies, Sec. 749; Pomeroy Equity Jurisprudence, Sec. 1402; *True v. Houghton,* 6 Colo. 318; *Johnson v. Brooks,* 93 N. Y. 337; *Butler v. Wright,* 186 N. Y. 259; *Manton v. Ray,* 18 R. I. 672; *Deitz v. Stephenson,* 51 Ore. 596; 95 Pac. 803; 36 Cyc. 560, 561, 562.)

FRICK J.

The plaintiff brought this action in equity for the specific performance of a certain agreement entered into between himself and the defendant John Peterson, the Universal Cleanser & Manufacturing Company, O. W. Carlson, E. R. Morgan, Charles Backman, and David Howells, and said John Peterson, as the board of directors of said Universal Cleanser & Manufacturing Company, a corporation, and said John Peterson as an individual were all made parties defendant to the action. At the hearing the action was dismissed as against all of the defendants except John Peterson, against whom alone judgment was duly entered as hereinafter stated, from which he appeals.

The agreement sued on is as follows:

"Salt Lake City, Utah, Sept. 3, 1909. I, John Peterson, of Salt Lake City, Utah for value received in the sum of $250 cash from Joseph Burdette second party of the same place, receipt of which is acknowledged, hereby grant, bargain and sell the following described articles and business, to wit: An undivided one-tenth interest in that certain business known as the Universal Manufacturing Company, now doing business at No. 24 W. North Temple St. in Salt Lake City, Utah, which business includes the manufacture and ownership of what is known as 'Sweepola, Tapis-Lavo, Magic Paper and Wall Cleaner,' also house cleansing articles such as soap, scouring and cleansing articles, liquid metal polish and any and all other articles connected with said business, including also a one-tenth interest in all rights of patent connected with any of said articles whether now procured or to be procured in the future. It is further agreed that within a reasonable time a corporation is to be organized owning all of said articles and business and patents, and that said second party shall have a full one-tenth interest represented by this sale in said corporation. Witness the signatures of the parties hereto the day and year first above written.

JOHN PETERSON,
J. BURDETTE.

The plaintiff, respondent here, after referring to said agreement in his complaint, alleged that on the 5th day of June, 1910, the corporation provided for in said agreement was duly incorporated and organized by the name above stated; that the individual defendants mentioned constituted the board of directors of said corporation at the time this action was commenced; that said corporation was capitalized for $300,000, which capital was divided into 300,000 shares of the par value of one dollar each; that 130,000 shares of said capital stock were issued to said John Peterson, and that he, according to the books of said corporation, is the owner and holder of said 130,000 shares of stock; that said corporation was organized and its capital stock was based entirely upon the property described in the agreement aforesaid, of which the respondent was the owner of one-tenth and said Peterson of nine-tenths, and that said corporation accepted said property in full payment for said capital stock; that, under the terms of said agreement, respondent was entitled to a one-tenth part of the capital stock of said corporation; that, after said corporation had been duly organized, said Peterson transferred to respondent 10,000 shares of said capital stock, and no more, and has failed and refused and still refuses to transfer or issue to him the remainder of said one-tenth part of said capital stock, to wit, 20,000 shares. There are other allegations which were material and proper in the court below, but which are not necessary to this appeal. Respondent prayed that said Peterson be compelled to comply with the terms of said agreement, and that he be required to transfer the remaining 20,000 shares of said one-tenth part of said capital stock to respondent, or that he have judgment for the value of said stock.

The defendants filed a joint answer in which they practically admitted the allegations of the complaint, except that respondent was entitled to any further shares of stock. They also set up two affirmative defenses: (1) That 10,000 shares was all that respondent was entitled to receive in the corporation that was actually organized; and (2) that he

had received and accepted in full accord and satisfaction 10,000 shares as and for his interest in said corporation.

While the case was equitable, a jury was nevertheless called, and, in addition to their general verdict in favor of respondent, they also answered special findings submitted to them, which are as follows:

"First. Did the plaintiff, Joseph Burdette, agree with the defendant John Peterson to accept 10,000 shares of the capital stock of the Universal Cleanser & Manufacturing Company in full payment and satisfaction of his rights, as set forth in that contract made and entered into between the plaintiff and the defendant and designated as plaintiff's Exhibit A, Answer: No.

"Second. Was the defendant corporation, the Universal Cleanser & Manufacturing Company, organized pursuant to the contract, plaintiff's Exhibit A, between the plaintiff and the defendant? Answer: Yes.

"Third. Was the business and personal property referred to in the contract between the plaintiff and the defendant, plaintiff's Exhibit A, transferred to the defendant corporation as the assets of said corporation? Answer: Yes."

The court adopted both the general verdict and the special findings of the jury, and also made findings of its own which, in view of the conclusions reached, we do not deem necessary to set forth here.

At the trial it was admitted, as part of respondent's evidence, that the corporation was capitalized for $300,000, which was divided into 300,000 shares of the par value of one dollar each; that of the capital stock there was issued to four of the directors, as qualifying stock, 4000 shares, to appellant 130,000 shares, to O. W. Carlson 75,000 shares, to which we shall refer again hereafter. It was also conceded that there were placed in the treasury 91,000 shares. If we add the several amounts issued to the 91,000 shares not issued, the whole 300,000 shares of the capital stock are accounted for. As we have seen, under the agreement, and as found by the jury, appellant and respondent furnished all of the property upon which the capital stock of the corpora-

tion in question is based in the following proportions: Appellant nine-tenths and respondent one-tenth, for which one-tenth he was to receive a "full one-tenth interest" in the corporation. When the corporation was organized, however, it was provided in the articles of incorporation as follows: "It is mutually agreed and understood that the said 91,000 shares of stock be and are hereby contributed by the stockholders of this corporation to the treasury of said corporation for its development and to pay its debts; it being expressly understood and agreed that the said 91,000 shares contributed as aforesaid be sold and disposed of for the benefit of this corporation at such time and place and on such terms as the board of directors of the corporation may in their judgment deem best."

Respondent, however, insisted at the trial in the court below, and that court agreed with him, that, notwithstanding the foregoing provision in the articles of incorporation, he nevertheless was entitled to one-tenth of said 91,000 shares as well as of one-tenth of the 209,000 remaining shares which had been issued, for the reason, as his counsel contended, that the one-tenth part of the 91,000 shares is based on the property accepted by said corporation precisely the same as the one-tenth part of all other stock is based thereon. In justice to counsel it should, however, be stated that the appellant, in organizing the corporation, entirely ignored the respondent and gave him neither part nor share in the corporation, nor any voice in its organization or management. The principal, if not the only, question on this appeal, therefore, is: What should respondent recover, if anything, in this action? It will be observed that respondent claimed his interest in the corporation after it was organized, and he actually accepted 10,000 shares of its capital stock. This acceptance must be deemed to have been pursuant to the provisions contained in the articles of incorporation, and he thus became a stockholder in the corporation under said articles, and as such brings this action asking for the remainder of the one-tenth part of the shares of stock he claims to be entitled to in said corporation. Respondent was not

required to come in as a stockholder at all.  The appellant having ignored respondent's rights under the contract, and having excluded him from participating in the corporation, he could have sued appellant for damages for a breach of said contract.  This respondent did not choose to do, but he chose to sue for and seek to recover his interest in the corporation as a stockholder.  And perhaps he chose the wiser part.  In view that the remedy against appellant may have been inadequate, he at least had the legal right to do this. But, having chosen to claim his interest as a stockholder under the articles of incorporation, he must also be deemed to assume the burdens that are cast upon a stockholder by those articles.  It is there provided that 91,000 shares of the capital stock are set apart to be used for the benefit of the corporation, which is simply another way of stating that they are set apart for the joint benefit of the stockholders, since whatever benefits the corporation in a pecuniary way, in the nature of things, must benefit the stockholders.  Respondent, in claiming as a stockholder, must therefore be held to have consented to the provisions contained in the articles of incorporation by which the 91,000 shares were set apart as a working capital, and which thus, in one sense at least, became an asset of the corporation.  Therefore he is not entitled to have issued to himself now any part of the 91,000 shares directly, since he holds his interest in them and is benefited indirectly as a shareholder as he is in all the assets of the corporation.  Respondent, therefore, cannot recover any part of said 91,000 shares for the reason that, in claiming as a shareholder, he must be deemed to have consented that said 91,000 shares shall not be distributed among the shareholders, but that the same shall constitute an asset of the corporation in which he has an interest in proportion to his holdings in the corporation.

However, there is still another reason why respondent is not entitled to have issued to himself any part of said 91,000 shares unless the same should be issued to the shareholders as a stock dividend.  The 91,000 shares are now an asset of

the corporation and must be treated the same as any other property owned by it must be treated.

It is elementary that a shareholder cannot claim a segregation of his interests in the corporate property. The only way that segregation may take place is by declaring a dividend of earned profits or by making what is called **2** a stock dividend. When either method is resorted to, each shareholder receives in proportion to the number of shares he holds in the corporation; that is, in the ratio that the shares owned by him bear to the whole number of shares that have been issued by the corporation and are outstanding. If, therefore, the 91,000 shares should be sold at a dollar a share, and a dividend of that sum should be declared, respondent as a shareholder, would obtain his proportion thereof in the ratio just stated. If, upon the other hand, such stock is issued in payment for property purchased by the corporation, or if its outstanding debts were paid from the proceeds derived from its sale, then, in either case, respondent would be benefited by having the shares he holds in the corporation enhanced in value to the extent that outstanding debts were paid and canceled or to the extent that property had been acquired by the corporation. It is in that way, and not by having a part of the 91,000 shares of stock directly issued to himself, that he receives his benefits. He cannot have both. The principle is clearly illustrated by the Supreme Court of California in *Tulare v. Kaweah Canal & Irr. Co.*, 44 Pac. 662. By receiving one-tenth of the issued stock, respondent possesses one-tenth of the voting power, and his stock represents one-tenth of the assets of the corporation. He thus has just what the agreement between him and appellant provides for, namely, "a full one-tenth interest in said corporation." The court therefore erred in awarding to respondent a one-tenth part of the 91,000 shares of stock which was placed in the treasury. The amount allowed respondent, for the reasons just stated, must therefore be reduced by 9100 shares, which would leave 10,900 that should be issued to him if that number must not be reduced for another reason now to be stated.

Recurring now to the 75,000 shares which were intended for O. W. Carlson. It was made to appear at the trial that he did not accept them or any part thereof. Appellant's counsel therefore contend that a further deduction from what was allowed respondent should be made in an amount equal to a one-tenth part of said 75,000 shares, or 7500 shares, which would reduce the amount to be allowed respondent from 10,900 to 3400 shares. This being a case in equity, if the evidence justified it we might make the correction ourselves; but we are unable to determine from the evidence what disposition was made of the 75,000 shares of stock. To avoid injustice, we leave the question open with respect to whether the 75,000 were surrendered to the corporation and thus became an asset or whether they were returned to Mr. Peterson to be dealt with by him. If the 75,000 shares are in fact a part of the assets of the corporation the same as the 91,000 shares, then respondent cannot obtain any part thereof, for the same reasons that he cannot obtain any part of the 91,000 shares. But if the 75,000 shares did not actually become a part of the assets of the corporation or if said shares were controlled by Peterson for his benefit, then respondent is entitled to a one-tenth part thereof, or to the one-tenth part that did not become assets of the corporation, as the case may be.

The judgment, therefore, will have to be modified as indicated above, and this case will have to be remanded to the district court, with directions to ascertain whether the said 75,000 shares, or any part thereof were turned back into the treasury of the corporation as unissued stock and whether the same became assets of the corporation. If the court shall find that the 75,000 shares were not issued and that they actually belong to the corporation, then the court is directed to reduce the amount allowed respondent in the judgment first, by deducting from the 20,000 shares thus allowed the 9100 shares; and, second by deducting from the 10,900 shares remaining 7500 shares, leaving to be awarded to respondent either said 10,900 shares or only 3400 shares,

in accordance as the court shall find the facts to be as above indicated.

Counsel for appellant, in their brief, have also argued three other propositions. We have considered them and in our judgment counsel in neither instance, have overcome the presumption of the correctness of the findings and conclusions with respect to those propositions, or either of them. The findings and judgment must therefore stand, and are affirmed except as modified by the deductions which are to be made upon the conditions above stated.

The case is therefore remanded to the district court, with directions to modify its findings upon the one question indicated herein, and to hear the evidence upon that question, and to make findings and conclusions in accordance with the evidence adduced upon that subject and to enter judgment in accordance with the evidence adduced and in accordance with the views herein expressed; the judgment to be in the alternative. Each party to pay one-half of the costs incurred in this court.

McCARTY, C. J. and STRAUP, J. concur.