## TULARE IRRIGATION DIST. v. KAWEAH CANAL & IRRIGATION CO.

### Sac. No. 66; April 7, 1896.

#### 44 Pac. 662.

**Corporation—Purchasing Its Own Stock.**—The purchase by a corporation of a part of its own stock, until it is reissued, in effect reduces its stock to that extent.

**Corporation—Sale of All Its Property.**—The sale by a corporation of all its property and franchises, except its corporate franchise, does not carry with it shares of its own stock, which it had bought in for delinquent assessments, and had not authorized to be reissued.[1]

APPEAL from Superior Court, Tulare County; W. W. Cross, Judge.

Action by the Tulare irrigation district against the Kaweah Canal and Irrigation Company. Judgment for defendant and plaintiff appeals. Affirmed.

J. W. Davis for appellant; Bradley & Farnsworth and Pringle, Hayne & Boyd for respondent.

HAYNES, C.—This cause was tried by the court, and findings and judgment were for the defendant; and the plaintiff appeals from the judgment and an order denying its motion for a new trial.

The plaintiff is a corporation, organized under the act of the legislature known as the "Wright act," for the purpose of supplying water for irrigating the lands within the district so organized. The defendant is a corporation organized

---

[1] Cited in the note in 103 Am. St. Rep. 570, on the sale by a corporation of all its assets.

under the general statute, and owned certain water rights, dams, canals, ditches, real estate, etc., from which the Tulare irrigation district could be supplied with water for the purposes for which it was organized. Under these circumstances plaintiff and defendant entered into an agreement whereby the defendant sold and conveyed said property to the plaintiff in consideration of the sum of $150,000, payable in the bonds of the plaintiff at par. The deed executed by the defendant to the plaintiff, after describing certain lands, water rights, canals, etc., as to which there is no controversy, concluded the description of property and rights conveyed, as follows: ''Also all right, title, and interest of the first party (the defendant) in and to all dams, headgates, and drops used or maintained in connection with the ditch or ditches of the first party, or any of them; also all tools, scrapers, plows, implements, and personal property of the first party, except its office furniture, books, and papers; also all franchises, rights, and privileges now owned or enjoyed by the first party, except its corporate franchise to exist and transact business as a corporation in accordance with its articles of incorporation.''

Prior to this sale the defendant purchased thirty-five shares of stock in its own corporation, at a sale thereof for a delinquent assessment, and which stock had been transferred to the defendant corporation upon its books, and had not been reissued. Twenty-five thousand dollars of the bonds received from the plaintiff were applied in part to the payment of an indebtedness to an individual, and in part as a commission for negotiating the sale. Another portion of the bonds was set aside to meet other liabilities of the defendant, and the remainder of the bonds were distributed to its stockholders as a dividend, the amount of the dividend being $200 per share. This action was brought by the plaintiff to compel the delivery to it of said thirty-five shares of stock in the defendant corporation, and to recover the dividend thereon of $200 per share, payable in the bonds received from the plaintiff, together with the interest paid by the plaintiff thereon, claiming that said stock was personal property belonging to the defendant at the time of the sale, which was not excepted therefrom, and which, by the sale, passed to it under the general clause of the conveyance above quoted.

The judgment for the defendant was right. Stock in a corporation of the character of the defendant represents an interest in the property of the corporation, and is evidence that the lawful holder is the owner of an interest in the property of the corporation in the proportion that his shares bear to the whole number of shares issued and held by the stockholders. The legal title to the property represented by the stock is vested in the corporation for the benefit of the stockholders. When these thirty-five shares were bought by the corporation for the unpaid assessment, the amount so paid was charged up as a liability, to be met by the remaining stockholders, and the remaining stock represented the entire property of the corporation. The thirty-five shares could not be liable for assessments, nor participate in dividends, nor be voted at elections. These shares were dormant, and could only be resuscitated by selling them and placing the selling price in the treasury for the benefit of the stockholders.: Robinson v. Mining Co., 72 Cal. 32, 13 Pac. 65. But, conceding that the defendant corporation could have sold these shares, it would require corporate action to authorize it, either by the stockholders or by the directors, and we see no evidence of any intention to do so; and appellant's contention, if carried to its practical result, demonstrates that it could not have been within the intention of either party.

Suppose the property which the defendant concedes was sold, conveyed and delivered to the plaintiff was of the actual value of $150,000, no more and no less. If all the stock of the defendant corporation had been in the hands of individual stockholders, the plaintiff would have acquired no stock, but would have property the exact equivalent in value of the money or bonds paid. If we now suppose that, at the time of the purchase, one-half of the stock of the defendant corporation was in its treasury, having been purchased, as these thirty-five shares were, at sales for delinquent assessments, it would follow, upon plaintiff's theory, that, though it got, under its purchase, $150,000 worth of other property, it would also have acquired one-half its stock, and would be entitled to participate in a dividend of $200 per share, to be paid out of the identical bonds they paid for the property, thus getting back into plaintiff's treasury one-half of the purchase price paid, as well as property of the value of $150,000. In other words, they would practically get defend-

ant's entire property and one-half its stock for $75,000, or one-half of that which it agreed to pay, and did in fact pay, while the individual stockholders, whose stock alone, at the time of the sale, represented all the property of the corporation, whether in the treasury or out of it, would realize from the sale but half its value. We find no evidence in the record which indicates that such a result was contemplated or intended by either party during their negotiations, nor does the language used in the conveyance permit such construction. "If a corporation has power to reduce its capital stock, it has been held it may do so by purchasing and retiring a portion of its shares": Cook on Stock and Stockholders, sec. 282. But whether the defendant had power to permanently reduce its stock or not, the effect of the purchase was to reduce its stock temporarily and until it should be regularly reissued. So long as it remains in the treasury, it represents no part of or interest in the property of the corporation. It was as though it had never been issued; and in Brewster v. Hartley, 37 Cal. 15, 30, 99 Am. Dec. 237, it was said: "The capital stock of a corporation, previous to its being issued, cannot, in any proper sense, be called the property of the corporation." And that is true as to the stock in question here. It is true that "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity": Civ. Code, sec. 1638. The appellant's contention, carried to its logical result, would involve an absurdity, inasmuch as its effect would be to return to it $7,000 of the money paid, with the right to participate in any future dividends that might be declared by the defendant.

It is also contended that defendant ratified the sale. The ratification of the sale is clear, but the ratification did not extend to anything not included in the conveyance, and therefore did not reach the stock. Appellant discusses several rulings of the court upon questions of evidence, but these alleged errors were not specified in its statement on motion for a new trial. However, we have examined them, but find therein no ground for a reversal. These questions went to the point whether during the negotiations any mention was made of these shares. Upon the face of the agreement and conveyance, we are obliged to hold that the stock in question did not pass, and the appellant, therefore, could not be prejudiced by evidence that no mention was made of it during the nego-

tiations resulting in the sale. The judgment and order appealed from should be affirmed.

We concur: Vanclief, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.