**ROBINSON v. BRADLEY et al.**

No. 13050.

Court of Civil Appeals of Texas.   Dallas.

May 18, 1940.

Latimer Murfee and W. B. Browder, Jr., both of Houston, and Malone, Lipscomb, White & Seay, of Dallas, for appellant.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellees.

LOONEY, Justice.

T. A. Robinson, Jr., appealed from an order denying temporary injunctive relief, sought against the Mortgage Investment Corporation, a Texas corporation, Wm. S. Bradley, stockholder, director and president of the Corporation, F. O. Long, stockholder and director, and the Glens Falls Insurance Company, a New York corporation doing business in Texas under a per-mit, F. O. Long being its agent and representative.

Appellant sued to recover $33,750 damages against appellees Bradley, Long, and Glens Falls Insurance Company, alleging the breach of a contract with Bradley for the purchase of 90 shares of the common stock of the Mortgage Investment Corporation, and, by suitable allegations, sought to hold Long and the Insurance Company liable; and, as a stockholder in the Mortgage Investment Corporation (owning one per cent of its stock), sought on its behalf to compel appellees (other than the Mortgage Investment Corporation) to render an accounting in regard to their dealings and transactions with the Corporation, and to compel payment to it of any sum or sums ascertained to be due as the result of the accounting; and further alleging that, appellees were threatening to consummate a reorganization of the Mortgage Investment Company in a manner not authorized by law, in violation of the Anti-Trust and Insurance Statutes of the State, and damaging to appellant and other minority stockholders, prayed for both permanent and temporary injunctive relief, to prevent the contemplated reorganization.

Appellant alleged that, on the 5th day of June, 1937, appellees Bradley and Glens Falls Insurance Company entered into a written contract looking to the chartering of the Mortgage Investment Corporation, to serve as a loan agency qualified to act as an approved mortgagee under the Federal Housing Act, with a capital of $100,-000 and surplus of $25,000, which amount the Glens Falls Insurance Company agreed to pay for all the stock of the proposed corporation, Bradley agreeing to repurchase same, either for himself, or for others whom he might associate, at $125 per share; no stock to be transferred, however, until paid for.

As an outgrowth of the agreement between Bradley and Glens Falls Insurance Company, the Mortgage Investment Corporation, on June 9, 1937, was chartered under the laws of this State, with an authorized capital of $100,000, divided into 1,000 shares, of the par value of $100 each. Wm. S. Bradley, Frank O. Long (appellees), T. A. Robinson, Jr. (plaintiff), E. R. Haley, E. A. Bradley, A. I. Madden and L. K. Wadsworth subscribed for the stock, plaintiff subscribing for 10 shares, for which he paid $1,250.

Appellant alleged that, the capital structure of the Mortgage Investment Corporation becoming somewhat impaired, Glens Falls Insurance Company paid $50,000 additional into the surplus of the Corporation, which was to be added to the repurchase price of the stock when sold, thus increasing the purchase price from $125 to $175 per share.

In the status substantially as just described, the Mortgage Investment Corporation amended its charter, increasing its capital and issuing preferred stock in the aggregate amount of $150,000. The preferred stock was all subscribed and paid for by Glens Falls Insurance Company, but subsequently, was re-acquired by the Mortgage Investment Corporation, and, at the institution of the present proceedings, was held as treasury stock.

The recital just given brings us to the present controversy. Appellant alleged that, unless restrained, appellees will put through a scheme for the reorganization of the Mortgage Investment Corporation, damaging to appellant and other minority stockholders. The threatened reorganization involves: (1) The sale of the $150,-000 preferred stock re-acquired by the Corporation; (2) the distribution among stockholders of $75,000 of surplus; (3) the decrease of the capital ($100,000) common stock by fifty per cent, and the distribution among stockholders, of the amount of the reduction; (4) the declaration and payment of a $9 per share dividend to the stockholders; (5) the borrowing, by Wm. S. Bradley, of between forty and fifty thousand dollars for the purpose of purchasing

from the Glens Falls Insurance Company, the remainder of the stock held by it; and (6) the capitalization, for $50,000, of the existing service agency contracts of the Mortgage Investment Corporation, securing its approval by the Secretary of State (evidently for the purpose of amending the charter increasing the capital based upon the reasonable value of existing service agency contracts), and declaring a stock dividend, distributing the amount of the increase ratably among the stockholders.

As heretofore stated, the suit has a trinity of purposes: (1) Appellant seeks, individually, to recover from Bradley, Long, and Glens Falls Insurance Company, damages for the alleged breach of a contract, between him and Bradley, for the purchase of 90 shares of the stock of the Mortgage Investment Corporation; (2) as a stockholder in Mortgage Investment Corporation, he seeks an accounting by the appellees named, as to their dealings with the Corporation, and to compel payment to it of any amount, or amounts, found to be due as the result of the accounting; and (3) also seeks injunctive relief to prevent appellees from consummating the contemplated reorganization of the Mortgage Investment Corporation.

■ The right of a minority stockholder to maintain a suit, in behalf of the corporation, against its officials, for wrongs committed against the corporation, and to recover for losses resulting from fraud, mismanagement, or other breaches of trust, is undoubted; and he may also maintain an action in equity to restrain corporate officials from unlawful or ultra vires acts, and the right of a stockholder to bring such action does not depend upon the amount of his holdings, yet, where the great majority in interest (in the instant case, 99 per cent) is satisfied with the conduct of the affairs of the corporation, courts should closely scrutinize the facts before granting such relief sought by a minority stockholder.

Although appellant claims that, the arrangements between Bradley and Glens Falls Insurance Company exceeded its charter powers and violated the Anti-Trust and Insurance Laws of the State, we do not deem it necessary to pass judgment upon or discuss those matters, or to scrutinize deeply the contractual relations between Bradley and the Glens Falls Insurance Company, because we do not think the correctness, whether or not, of the action of the court in denying the temporary injunctive relief sought, is dependent upon the decision of those matters; nor do we deem it necessary to bring into the discussion the phases of the suit seeking recovery of damages and an accounting as against appellees, Bradley, Long, and Glens Falls Insurance Company; for, if appellant is entitled individually, or as a stockholder, to such relief, the right thereto is dependent upon facts now in existence that could not be affected either by the issuance, or refusal to issue, the temporary injunction.

As alleged, the first step in consummating the proposed reorganization of the Mortgage Investment Corporation involves the sale of the re-acquired $150,000 worth of preferred stock. Appellant concedes that, having participated in the original issue, he is precluded from questioning its legality; but, the stock having been re-acquired by the Corporation, his contention is that, it cannot be legally reissued without the consent of all stockholders.

■ Preferred stock is not prohibited in this State; in fact, is recognized as a legitimate means of obtaining money to carry out the purposes for which the corporation is formed, and the contractual relation created is more akin to that of debtor and creditor, than it is to that of corporation and stockholder. 18 C.J.S., Corporations, § 222, page 653. This was the effect of our holding in Tweedie Footwear Corporation v. Fonville, Tex.Civ.App., 115 S. W.2d 421, writ refused; also see 10 T.J., sec. 65, pp. 672–675; 18 C.J.S., Corporations, § 222, pages 650–653.

■ The charter amendments authorizing the increases of capital and the issuance of $150,000 preferred stock presumably were had in accordance with the provisions of Art. 1330 R.C.S., Vernon's Ann.Civ.St. art. 1330; and having been issued and thereafter reacquired, the stock has same status as any other asset belonging to the Corporation, hence, may be disposed of by the governing body, for any legitimate corporate purpose. See 18 C.J. S., Corporations, page 645, §§ 211, 212.

■ The second step in the proposed reorganization involves the distribution of the surplus of $75,000, of which appellant will receive $250. He contends that, the proposed distribution is unwise, and discriminatory in favor of Glens Falls Insurance Company. Under the distribution proposed, each common stockholder would receive $25 per share; the Glens Falls In-

surance Company would receive, as stockholder, $23,250, and, in addition, the sum of $50,000, the amount advanced at the time the financial structure of the Mortgage Investment Corporation became somewhat impaired. So, it is obvious that, under the proposed distribution, each stockholder would receive precisely the amount theretofore paid in as surplus. We do not think the distribution proposed discriminatory. Its accomplishment involves simply the exercise of judgment on the part of the managing officials of the Corporation, and, even if deemed by us unwise and improvident, we would not be authorized to substitute our judgment for theirs.

The third step in the proposed reorganization of the Corporation involves the decrease of its capital common stock from $100,000 to $50,000, and the distribution of the amount of the reduction ($50,000) among the stockholders ratably, of which appellant would receive $500. We cannot presume that the decrease of the capital stock of the Corporation would be attempted, or could be accomplished in any manner other than as permitted by statute, Art. 1332, R.C.S. The wisdom or propriety of such a step in the scheme of reorganization is a matter for the discretionary action of the governing body of the Corporation alone, with the exercise of which courts are not authorized to interfere.

The fourth step in the alleged reorganization contemplates the declaration and payment, ratably to the stockholders, of a $9 per share dividend from earnings, under which, appellant would receive $45. This, too, is a matter belonging exclusively to the management of the Corporation, in regard to which the courts could not, with propriety, interfere.

The fifth step in the threatened reorganization contemplates the borrowing by Bradley individually, from someone, forty to fifty thousand dollars, to be used by him in the purchase from Glens Falls Insurance Company, of all stock owned and held by it in the Mortgage Investment Corporation. It is perfectly obvious that, these matters involve purely personal transactions between the two stockholders named, in which neither the Corporation, as such, nor appellant, its sponsor, is concerned.

The next step in the alleged reorganization contemplates the capitalization of the service and agency contracts held by the Mortgage Investment Corporation, for the sum of $50,000, securing the approval of the Secretary of State, and declaring a stock dividend, to be ratably distributed among the stockholders, of which, appellant would receive five shares of the par value of $100 each.

That the service contracts acquired by the Mortgage Investment Corporation are valuable revenue-producing assets, is conceded by the appellant. We cannot assume that the Secretary of State would approve an increase in the capital stock of the Corporation, unless the value of the assets justified the same. There being no statute in this State forbidding the declaration of a stock dividend based upon earnings, whether or not such a step should be taken, is a matter for the sound judgment of the governing officials of the Corporation. See 10 T.J., sec. 74, pp. 687, 688; 18 C.J.S., Corporations, § 466, pages 1106–1114.

We have not been convinced that, the trial court abused its discretion in refusing the temporary writ of injunction sought, therefore affirm its judgment.

Affirmed.