**W. B. FULTZ, Appellant,**

v.

**ANZAC OIL CORPORATION,**
Appellee.

No. 16191.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1957.

Marcus Ginsburg, Robert S. Newkirk, Fort Worth, Tex., McDonald, Sanders, Nichols, Ludlum, Wynn & Ginsburg, Fort Worth, Tex., of counsel, for appellant.

Talbot Rain, Morris Harrell, Dallas, Tex., Halbert O. Woodward, Coleman, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The sole question in this case is whether treasury stock held by a corporation in liquidation passes as an "asset" under a contract of sale of all of the corporation's assets.

The facts are very simple: the Board of Directors of Anzac, the corporation, called a special meeting of the stockholders to act upon a proposal to liquidate the corporation and, under the privileges of § 337, 1954 Internal Revenue Code, 26 U.S.C.A. § 337, effect a sale of the corporate assets to permit complete distribution within twelve months without a double, taxable gain under the Court Holding doctrine, Commissioner of Internal Rev. v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; and see, Merten's Commentary on The 1954 Code, §§ 337:1 to 3. Fultz, a stockholder, actively participated in that meeting which, after rejecting several amend-

ments sponsored by him, unanimously approved the resolution of liquidation and overwhelmingly adopted the formal Plan of Liquidation. As a part of it, sealed bids were to be taken. The Fultz bid [1] of $451,250.00, being the highest, was accepted by an adjourned stockholders' meeting that same day.

By the formal contract,[2] signed the same day, the Corporation sold to Fultz " * * * all of the assets belonging to the * * * Corporation * * *, together with all other assets of Anzac of whatever nature, * * *," reserving, expressly, only cash and accounts receivable.

At the moment of adoption of the Plan of Liquidation, a total of 528 shares of the Corporation's own stock,[3] previously reacquired by it, was held in its treasury.

If this were an "asset" within the contract terms Fultz, notwithstanding

the reservation of cash and accounts receivable from the conveyance, would receive, in redemption of this 528 shares as a liquidating dividend, a substantial amount (approximately $25,000.00) of the cash which he, as purchaser, paid into the Corporation.

The District Court held that this was not such an asset. We think this was unquestionably right.

To establish that it was an asset under the contract, Fultz stresses greatly the fact that some courts [4] have held that treasury stock is an asset which a corporation, as a going concern, can sell.

Anzac counters this with the strong contention that here a realistic appraisal comes only when the theoretical is properly assayed. And this, it insists, shows [5]

---

1. "I submit the following bid on the assets of Anzac Oil Corporation, less cash on hand and accounts receivable.
   "This transaction to be completed within 30 days, subject to examination of title————$451,250.00. s/ W. B. Fultz"

2. "I. Anzac Oil Corporation * * * acting through its president * * * duly authorized by the Board of Directors * * *, and by unanimous vote of stockholders of said Corporation, do hereby agree to sell to W. B. Fultz * * * 'Buyer,' all of the assets belonging to the said Anzac Oil Corporation, including all oil, gas and mineral leases and interests therein, royalty interests, and production payments, together with all personal property used or obtained in connection with such interests, together with all other assets of Anzac of whatever nature, such sale to be subject to the conditions hereof and for the consideration hereinafter set forth; * * *".

3. Capitalization, under its Delaware Certificate of Incorporation, was:

   | | | |
   |---|---:|---:|
   | Authorized | | 20,000 |
   | Issued | 12,796-½ | |
   | Less Treasury | 528 | |
   | Issued and outstanding | | 12,268-½ |
   | Authorized but not outstanding | | 7,731-½ |

4. See, e. g., Robinson v. Bradley, Tex.Civ. App., 141 S.W.2d 425, 427, which speaks of the stock having the " * * * same status as any other asset belonging to

the Corporation, hence, may be disposed of by the governing body, for any legitimate corporate purpose * * *"; and Amelia H. Cohen Trust v. Commissioner, 3 Cir., 121 F.2d 689, 691, "Treasury stock is an asset in the company's treasury and may be resold at any time as suits the corporate owner's purpose * * *"; and Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 150, which recognizes that a share of treasury stock, as distinguished from stock retired altogether, "may be resold for what it will fetch on the markets * * *."

5. Anzac emphasizes the following material in elaboration of these asserted concepts:
   Hills, Federal Taxation v. Corporation Law, 12 Wis.L.Rev. 299: "Can a corporation have 'ownership' in itself? Can it possess 'legal rights and powers' or 'legal property' or 'property' derived solely from itself? Corporation law holds it cannot. Treasury shares do not have voting rights, dividend rights or distribution rights on liquidation, so what rights, if any, remain? Perhaps the 'right' of the corporation to reissue its treasury shares for a valuable consideration if its charter law permits—but that is a mere incident of incorporation which is applicable to unissued as well as issued shares. Treasury shares are not a corporate 'asset' and cannot be considered an asset in computing net assets or surplus available for dividends or share purchases."
   See Kester, Advanced Accounting, 234 (1946 Ed.): "To hold that the company

ty a reduction of equity—capital, the "payment" a distribution of it to the transferring stockholder, with outside

by the true nature of a corporation, the corporation can hardly own any part of itself so that the transaction is in real-

as a legal entity apart from its owners can own a share of itself is obnoxious to the realities of the situation; all the company holds is a right to resell such purchased shares and until it had contracted to sell them its assets and its proprietorship are both less than they were before the purchase of the treasury stock."

See Robinson v. Wangemann, 5 Cir., 75 F.2d 756, 757: "A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of the assets to the stockholder."

Ballantine, The Curious Fiction of Treasury Shares, 34 Calif.L.Rev. 536, 538 (1946): "The truth is that 'treasury stock' is merely authorized stock which may be reissued as fully paid without some of the restrictions upon an original issue of shares as to consideration and as to pre-emptive rights, if any * * * It no more represents a present asset than authorized but unissued shares, being merely the opportunity to acquire new assets if anyone wishes to buy the shares. If the company becomes insolvent, no such opportunity will arise and the treasury stock will represent nothing of value to the creditor. * * * It is unfortunate that accountants by reason of erroneous concepts of treasury shares should often misinterpret by their entries in balance sheets the financial and legal effect of transactions by corporations in their own shares. An honest method of presentation is to show treasury shares simply as a deduction from the number of shares outstanding without any entry in the asset column or liability column of the balance sheet. The surplus will stand diminished by the amount of the purchase price, as in case of a withdrawal by way of a dividend."

Hills, Accounting In Corporation Law, 12 Wis.L.Rev. 494, 501 (1937): "In neither case is there any justification for the practice of carrying treasury shares as an asset, as they cannot have in value in fact nor value for accounting purposes. They have no more value than unissued shares, which have never been treated as an asset by accountants. Can a share of stock which has been issued for cash and later repurchased have more value than a share which has never been issued? It cannot, and the only reason for giving it an asset value is to prevent the reduction of the very surplus from which it must by law be purchased. * * *"

Dodd and Baker, Cases on Corporations, 1951 2nd Edition, 1232: "Assets may be distributed to shareholders by dividends. Another method by which a corporation may distribute assets to shareholders is by purchase or other acquisition of some of its own shares, * * *. Although shares thus purchased are * * * treated as 'treasury shares,' * * * it is obvious that, although the selling shareholder has given up an asset, the corporation has not acquired one. Its own shares are of no value to it unless and until they are resold. What has actually happened is that the corporation's assets have been reduced by the amount paid for the shares, while the proportionate interest of each of the other shareholders in the diminished assets has been increased by diminishing the number of outstanding shares."

Pace v. Pace Bros. Co., 91 Utah 132, 59 P.2d 1, 5: "It may be remarked that it would give little comfort to a creditor if he found all of the assets gone but the treasury full of the corporation's own stock certificates paid for by its assets."

Some jurisdictions forbid altogether reacquisition by the corporation of its own stock or require that the sum exchanged for it come from earned surplus:

E. g., England, Trevor v. Whitworth, 12 App.Cas. 409 (H.L. 1887); Texas Business Corporation Act, Article 2.03, subd. F, V.A.T.S., "In no case shall a corporation purchase its own shares when there is a reasonable ground for believing that the corporation is insolvent, or will be rendered insolvent by such purchase or when, after such purchase, the fair value of its total assets will be less than the total amount of its debts." See also Article 2.03 C and E.

General Corporation Law of the State of Delaware; 8 Del.C. §§ 102, 160: "* * * no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation."

creditors having less, not more, assets to reach, and any "resale" by the corporation a reissue of stock.

This simple case requires no attempted resolution of these intriguing claims, especially since what we would say might be new but unhelpful grist in the bulging mill of Federal Income Tax Law (see, e. g., Federal Income, Gift and Estate Taxation, Rabkin and Johnson, Chapter 24, Stock Redemption and Partial Liquidation, §§ 24.01–24.10).

If this contract of sale from Anzac is read in the setting of its genesis—fully known to Fultz as a vocal and participating stockholder—the idea of an intended sale by the corporation of its own stock (treasury) as a part of a carefully integrated plan of complete liquidation is a plain contradiction. The result would be to add new stockholders to whom statutory rights to vote on the very Plan of Liquidation or its execution might have to be accorded, and who would, to the detriment of the prior stockholders, participate in liquidating dividends. It would be the issuance of new obligations against only an offsetting receipt of equivalent assets at a time when the purpose is to extinguish, not create, liabilities and to dispose of, not acquire, assets.

On the face of this contract for the sale of all property of a corporation in complete liquidation, it is clear that the term "assets" no matter how broadly described did not include treasury stock. Tulare Irrigation Dist. v. Kaweah Canal & Irrigation Co., 5 Cal.Unrep.Cas. 330, 44 P. 662.

This makes it unnecessary to pass upon Fultz's subsidiary contention that extraneous parol evidence on "intention" ought not to have been received. If anything more than a mere tit-for-tat rejoinder of like evidence offered by Fultz to prove the contrary—and hence something now beyond the reach of his complaint—it was but the paraphrasing of the legal contentions advanced by the parties on the basic nature of reacquisition of a corporation's own stock and could not possibly have been harmful.

■ Fultz's effort to saddle part of the expense of this ill-conceived litigation on the corporation as a vicarious suit for the protection and preservation of corporate property will not do.[6] The Corporation did not stand to gain if Fultz, rather than the former stockholders, got the $25,000.00. Nor would Fultz confer upon the Corporation a gain to it (or the other stockholders) if he enabled the Corporation successfully to resist the claim asserted by him. This was Fultz's controversy and he must bear the cost.

The judgment was right and is affirmed.[7]

Affirmed.

---

6. After bids were accepted, but before the formal contract was signed, Fultz was apparently exhilarated and casually, but confidentially, remarked to one of the stockholders: "Yes * * * [I got quite a deal] and I think that I got the jump on the boys on that treasury stock that I figure is worth $20,000. that they missed * * *" [and] "I told him to say nothing about anything * * * [since] * * * some of the bidders were still around there * * *".

7. Having disposed of the appeal on the merits, we have, of course, considered the contention and counter-contention growing out of the manner and time in which plaintiff's and defendant's Requested Findings of Fact, Fed.Rules Civ. Proc. rule 52, 28 U.S.C.A., were made, considered and acted upon. The Court could receive and act upon them and neither Fultz's motion to strike defendant's requests nor the Corporation's motion to dismiss the appeal has merit.