# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30652

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2013

Lyle W. Cayce
Clerk

THEODORE BRENNAN; BRIDGET BRENNAN TYRRELL,

Plaintiffs - Appellants

v.

OWEN E. BRENNAN, JR., also known as Pip Brennan; BLAKE W. BRENNAN; BERT CLARK BRENNAN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-2491

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:*

For this diversity action, the primary issue on appeal is whether the settlement agreement between Brennan's, Inc., and Appellee Owen E. Brennan, Jr., (Owen Brennan) was a credit sale of stock, transferring ownership of the stock to the corporation, or a stock redemption, allowing him to retain shareholder status until the stock was fully redeemed. Plaintiffs Theodore Brennan and his daughter Bridget Brennan Tyrrell appeal a 17 May

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30652

2013 order which, *inter alia*, required Brennan's, Inc., to recognize Owen Brennan as a shareholder and allowed him to vote his full amount of shares. Theodore Brennan and Tyrrell also appeal the 7 June 2013 order which, *inter alia*, set a special shareholders' meeting for 10 June 2013. For the primary issue, Appellants contend: the settlement agreement between Owen Brennan and Brennan's, Inc., was a credit sale of stock rather than a unilateral redemption; and, as a result, the district court erred in ruling Owen Brennan was a shareholder with the right to vote. We agree. Accordingly, the court-ordered shareholders' meeting was conducted improperly and is invalid. Therefore, the 17 May 2013 order, including that Owen Brennan is a shareholder, and the 7 June 2013 order are VACATED.

## I.

This action involves a dispute between members of the Brennan family over ownership and management of Brennan's, Inc., a Louisiana corporation which formerly owned and operated Brennan's Restaurant in New Orleans. Appellants are residents of Louisiana; Appellees Owen Brennan and his sons, Blake W. and Bert Clark Brennan, are residents of Mississippi.

By the late-1980s, the corporation was owned by three brothers: James, Owen, and Theodore Brennan. Each owned 196 shares of Brennan's, Inc., and served as an officer and director. Owen Brennan was responsible for the day-to-day operation of Brennan's Restaurant. In 1995, his sons, Blake and Clark Brennan, took over management of the restaurant.

Following Hurricane Katrina in 2005, Blake and Clark Brennan started a restaurant in Mississippi. As a result, the corporation sued them for, *inter alia*, trademark infringement. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706 (5th Cir. 2008), *cert. denied*, 556 U.S. 1127 (2009). And, in late 2006, James and Theodore Brennan voted to remove Owen Brennan as an officer and

No. 13-30652

director of the corporation. Tyrrell replaced him in those capacities. In February 2010, she was issued one share of stock as compensation for services rendered.

James Brennan died in July 2010. Accordingly, pursuant to a 1983 stock-redemption agreement, the corporation entered into an agreement with the Succession of James Brennan to redeem his stock through a promissory note. Between Owen Brennan's removal in 2006 and James Brennan's death in 2010, Owen Brennan instituted a number of actions against Brennan's, Inc., including seeking to have the corporation declared insolvent.

In December 2010, Owen Brennan and the corporation entered into the settlement agreement: Owen Brennan agreed to sell his stock in the corporation and dismiss all claims against it, Theodore Brennan, Tyrrell, and the Succession of James Brennan; the corporation agreed to forgive Owen Brennan's loan account and to pay, *inter alia*, $2 million with interest, through $20,000 monthly installments, and a subsequent $1 million without interest, at the same monthly rate. As security for all payments provided by the agreement, Owen Brennan received, *inter alia*: personal guarantees from Theodore Brennan and Tyrrell; and a security interest in his 196 shares of stock, to the extent of any outstanding payments (the security interest in the stock was also dependent on deficiency of the primary and secondary guarantees).

Around October 2011, the corporation defaulted on the settlement agreement. In September 2012, Owen Brennan filed a state-court action to enforce the agreement and accelerate all payments due. *See Brennan v. Brennan's, Inc.*, Civ. Dist. Ct. No. 12-9217 (Parish of Orleans, Louisiana).

On 8 April 2013, claiming shareholder status, Owen Brennan served the corporation with a written request for a special meeting to remove Theodore

3

No. 13-30652

Brennan and Tyrrell and elect new directors. The next day, he sent to the other shareholders notice of the special shareholders' meeting to be held on 26 April. Theodore Brennan and Tyrrell objected in writing.

At the special meeting, Owen Brennan voted his 196 shares, as well as the 196 shares of James Brennan's succession, by proxy, in favor of a resolution to: remove Theodore Brennan and Tyrrell as officers and directors; and replace them with Owen, Blake, and Clark Brennan. Voting under protest, Theodore Brennan and Tyrrell voted against the resolution. After the meeting, the parties agreed to co-manage Brennan's Restaurant until the dispute could be resolved through litigation.

On 29 April, Theodore Brennan and Tyrrell, with the corporation, filed this action in state court against Owen, Blake, and Clark Brennan, seeking injunctive and declaratory relief. Appellees removed this action to federal court, based on diversity jurisdiction. Subsequently, they filed a counterclaim seeking, *inter alia*, Brennan's, Inc., being required to recognize Owen Brennan as a shareholder.

Prior to a hearing set for 13 May 2013, Appellees moved to consolidate this action with *Colbert v. Brennan*, No. 12-2442 (E.D. La.), which concerned third-party-creditor claims against Owen Brennan and the Succession of James Brennan. After denying the motion for consolidation, the district court ordered the parties to remove references to issues involving the determination of the rights of the succession, a non-party in this action. The parties also agreed to remove allegations regarding Tyrrell's status as a shareholder. And, at the hearing, the parties agreed Brennan's, Inc., forgave loans of at least $330,000 and had paid no less than $400,000 pursuant to the settlement agreement.

No. 13-30652

Following the 13 May hearing, the district court:  denied Appellants'
request for injunctive relief; declared the 26 April shareholders' meeting was
invalid for lack of notice, Blake and Clark Brennan were not shareholders, and
none of the Appellees were officers or directors; and granted Owen Brennan's
request that the corporation recognize him as a shareholder.  *See Brennan v.
Brennan*, No. 13-2491, 2013 WL 2138736 (E.D. La. 17 May 2013).

Appellees moved for reconsideration, requesting a court-ordered
shareholders' meeting.  On 7 June, the court ruled in both *Colbert v. Brennan*,
addressing certain succession-related issues, and this action, addressing
Appellees' motion for reconsideration.  In the former, the court ordered, *inter
alia*, Brennan's, Inc., to recognize the succession's right to vote 196 shares.  In
the latter, the court ordered a special shareholders' meeting to be held on 10
June 2013, pursuant to Owen Brennan's 8 April 2013 written request.
*Brennan v. Brennan*, No. 13-2491, Amended Judgment (E.D. La. 7 June 2013).

## II.

Although Brennan's, Inc., was a plaintiff/counter-defendant in district
court, it is *not* a party on appeal.  Following the 17 May and 7 June orders,
Brennan's, Inc., timely filed a notice of appeal on 10 June.  That same day, the
court-ordered shareholders' meeting took place, resulting in Appellants'
removal as officers and directors of the corporation.  With Appellees thereafter
running the corporation, it failed to comply with Fifth Circuit Rule 42.3
(dismissal for failure to prosecute).  Therefore, on 16 July, the corporation's
appeal was dismissed.  When an appeal is dismissed, even an interested party
is not a party to the appeal.  *E.g.*, *Sheets v. United States*, 14 F.3d 53, at *1 n.2
(5th Cir. 1994) (unpublished) (noting former lead plaintiff failed to comply with
rules for notice of appeal and was "not a proper party on appeal"); *Natural Gas
Pipeline Co. of Am. v. Energy Gathering, Inc.*, 99 F.3d 1134, at *3 (5th Cir.

5

No. 13-30652

1996) (unpublished) (holding defendant whose appeal was dismissed for want of prosecution could not take advantage of reversal of original judgment as to co-defendant because dismissed defendant was not a party to that appeal).

The district court's conclusions of law are reviewed *de novo*; its findings of fact, for clear error. *E.g.*, *Mid-Continent Cas. Co. v. Davis*, 683 F.3d 651, 654 (5th Cir. 2012). Regarding the 17 May order, Theodore Brennan and Tyrrell contend the district court erred both in concluding that the settlement agreement is a stock redemption, within the meaning of Revised Statute 12:75A of the Louisiana Business Corporation Law, and in holding, as a result, that Owen Brennan had the right to vote as a shareholder of Brennan's, Inc. (Theodore Brennan and Tyrrell contest also the court's related ruling allowing Owen Brennan to vote all 196 shares in his possession, as opposed to a reduced number of shares following pro rata release. Because the settlement agreement was a final credit sale of stock, we need not reach this issue.) Appellants also challenge the district court's 7 June order setting a special shareholders' meeting, discussing the succession's right to vote at that meeting, and noting a dispute regarding Tyrrell's shareholder status.

### A.

In this diversity action, the Louisiana Business Corporation Law controls. *See* La. R.S. 12. Under Louisiana law, "[t]he determination of whether a contract is clear or ambiguous is a question of law". *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007) (citations omitted). Further, "when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law". *Id.* (citations omitted); *see also New Orleans Jazz & Heritage Foun., Inc. v. Kirksey*, 40 So. 3d 394, 401 (La. App. 4th Cir. 2006) (an unambiguous contract "is interpreted

6

as a matter of law") (citation omitted). A contract's unambiguous terms will be enforced without further interpretation of the parties' intent. La. Civ. Code art. 2046.

If, however, "the contract is ambiguous, the agreement shall be construed according to the intent of the parties, which is to be inferred from all of the surrounding circumstances". *Kirksey*, 40 So. 3d at 401; *Fleet Intermodal Servs., LLC v. St. Bernard Port, Harbor & Terminal Dist.*, 60 So. 3d 85, 89 (La. App. 4th Cir. 2011) ("[U]se of extrinsic evidence is proper only where a contract is ambiguous".) (citation and internal quotation marks omitted). Therefore, to the extent the district court's factual findings regarding the parties' intent must be reviewed, review will be for clear error.

The above-referenced § 75A establishes a general rule that each shareholder of record may vote his shares, as well as an exception, which precludes voting redeemable shares that have been redeemed. *See* La. R.S. 12:75A. Under § 75A, if shares have not been redeemed, the owner may vote them. If they have been redeemed, the holder may still vote the shares until "a sum sufficient to redeem such shares" has been paid. *Id.*

As the district court noted, Louisiana law provides that "the person . . . in whose name a stock certificate stands . . . and who has possession of said certificate, shall be regarded as the legal owner". La. R.S. 12:601; *see also Schexnayder v. Yolande Schexnayder & Son, Inc.*, 119 So. 3d 624, 628-29 (La. App. 5th Cir. 2013). Owen Brennan possessed the stock certificates, which, following the settlement agreement, were never requested to be returned to Brennan's, Inc. His possession creates a *presumption* of ownership. As the district court noted, Appellants attempt to rebut that presumption only by contending the settlement agreement is a credit sale, not a redemption.

No. 13-30652

Louisiana law also states: "Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid". La. Civ. Code art. 2456. Further, "a sale exists as between the parties when there is agreement as to object and price". *Succession of Dunham*, 408 So. 2d 888, 896 (La. 1981) (stating stock sale complete even when seller retained possession of title and security interest); *see also Hewitt v. Safeway Ins. Co. of La.*, 787 So. 2d 1182, 1186 (La. App. 3rd Cir. 2001) (holding Louisiana does not allow conditional sale where vendor retains title until payment is complete). Therefore, if the settlement agreement was a credit sale of stock, Brennan's, Inc., owned the shares (even if it did not possess them) and Owen Brennan's stock became treasury shares, which are not entitled to voting rights. *See* La. R.S. 12:75G. On the other hand, if the agreement was a stock redemption, he retained his status as a shareholder, including the right to vote his shares, until the corporation paid him in full.

Appellants contend "redemption" is a specific transaction, by which a corporation has the unilateral right to reacquire its shares, as distinct from a purchase pursuant to a bilateral agreement. Appellants equate a corporation's redemption right to a call option, which provides the issuer with the unilateral right to purchase (or call) shares at a pre-set rate.

The district court concluded, however, that the settlement agreement "was a stock redemption agreement within the meaning of Section 75A". *Brennan*, 2013 WL 2138736, at *9. In doing so, it applied a broad definition of "redemption" as a general term referring to any purchase of corporation shares by that corporation from its shareholder. *See id.*, at *10 n.73.

The primary issue at hand is whether § 75A's reference to "redemption of redeemable shares" has a specific, or a general, meaning. Here, pursuant to

No. 13-30652

the above-referenced 1983 redemption agreement, the corporation had both a right to redeem any shares prior to transfer by any shareholder, at the pre-set price of $10,556 per share, and an obligation to redeem such shares, at the same per-share price and in specific $18,000 monthly installments, upon the death of any shareholder.  Both the restriction on transfer and the obligation to redeem were retroactively applied to all shares by agreement of all shareholders.  *See* La. R.S. 12:59D.  The parties do not dispute that Owen Brennan's shares were *redeemable shares* under § 75A.  The disagreement is whether the settlement agreement is a *redemption* of those shares.

Appellants acknowledge the modern trend to use redemption as a broad term for all stock acquisition, whether unilateral or bilateral.  *See, e.g.*, *Kan. Heart Hosp., LLC v. Idbeis*, 184 P.3d 866, 882 (Kan. 2008) ("Modern state corporation statutes governing stock repurchases no longer distinguish between redeemable shares and other types of shares.").  Louisiana, however, still distinguishes both redeemable shares and stock redemption.

Louisiana law uses "purchase" and "redeem" as separate terms when discussing a corporation's acquisition of its shares.  As stated in Louisiana Revised Statute 12:55A, "[a] corporation shall not *purchase or redeem* its shares when it is insolvent . . . or at a price, in the case of shares subject to redemption, exceeding the redemption price thereof ". (Emphasis added.)  And, as stated in Louisiana Revised Statute 12:62B, a reserved surplus "shall not be available for . . . *purchase or redemption* of shares". (Emphasis added.)  If the district court is correct in its broad definition of redemption, those terms would be superfluous in these Louisiana Business Corporation Law provisions.

Although research did not reveal any Louisiana case law directly addressing the distinction between a credit sale of stock and a stock

9

redemption, both Appellants and Appellees cite affirmatively to the *Louisiana Civil Law Treatise*, which explains:

> The statutory language [of § 55 of the Louisiana Business Corporation Law] reflects the generally accepted distinction between *repurchase*, which is often used as the broad generic description for any acquisition of [the corporation's] own shares, and *redemption*, which more narrowly applies to the acquisition of shares pursuant to some right or obligation created as of the time of issuance of the shares.

LA. CIV. LAW TREATISE: BUSINESS ORGANIZATIONS § 27:02 (2012) (emphasis in original).

Cases applying Louisiana law also demonstrate a corporation's ability to either repurchase its shares through a negotiated agreement or redeem its shares through a unilateral right. *See, e.g., Jones v. Titan Realty Corp.*, No. 94-1752, 1995 WL 311922 (E.D. La. 19 May 1995) (describing corporation's attempt to negotiate purchase of shareholders' shares and subsequent unilateral redemption at pre-set rate); *Cantrell v. Pat O'Brien's Bar, Inc.*, 705 So. 2d 1205 (La. App. 4th Cir. 1998) (reviewing "credit sale [of shareholders'] remaining stock" pursuant to negotiated agreement); *Collins v. Universal Parts Co.*, 260 So. 2d 702 (La. App. 4th Cir. 1972) (involving corporation's obligation to redeem shares after the death of a shareholder at a pre-set rate). In some instances, Louisiana courts have conflated the terms; however, even in those cases, negotiated agreements are treated as final sale agreements. *E.g., Sec. Ctr. Protection Servs., Inc. v. All-Pro Sec., Inc.*, 650 So. 2d 1206, 1212 (La. App. 4th Cir. 1995) (referring to negotiated "contract for redemption of . . . stock" but noting "ownership of the stock was transferred to [the corporation] at the time the contract was perfected"). Further, the comments to § 75A prohibit voting shares "called for redemption", supporting the interpretation of

redemption as a unilateral right.  La. R.S. § 12:75A (off. cmt.) (equating redemption to unilateral call option).

As discussed, in December 2010, Owen Brennan and the corporation entered into the settlement agreement in order to resolve litigation.  To that end, he agreed to "sell to Brennan's all of his stock in Brennan's", while the corporation agreed to pay $2 million with interest, "pursuant to the TERMS AND RATE set forth" in the 1983 stock-redemption agreement, through $20,000 monthly installments.  In that redemption agreement, sections I (corporation's right of first refusal when shareholder seeks to transfer his shares) and II (corporation's obligation upon death of shareholder) include the same $10,556 price per share.  The 196 shares sold at that price would provide a total contract price approximately $70,000 greater than $2 million.  The monthly payment rate referenced in the settlement agreement, however, appears only in section II of the redemption agreement, addressing redemption of shares after the shareholder's death.  In any event, the 1983 stock-redemption agreement does not provide for any payments above the pre-set price and payment rate in exchange for redeemed shares.

Moreover, under the settlement agreement, after payment of the $2 million with interest, the corporation agreed to pay an additional $1 million without interest as "further consideration for the stock sale".  The corporation agreed to maintain several life insurance policies and pay another $6,000 per month in lieu of purchasing additional coverage for Owen Brennan.  The $6,000 monthly payment was also in "further consideration for the stock sale".  The corporation further agreed to forgive Owen Brennan's loan account.  The parties disagree about the purpose of the insurance payments and loan forgiveness.  In any event, the settlement agreement provides value far greater than the pre-set price and rates provided by the redemption agreement.

In sum, the agreement is unambiguously a negotiated credit sale of stock. Brennan's, Inc., did not have a unilateral right to redeem Owen Brennan's stock; and, as discussed above, redemption is always a unilateral right or obligation to call shares, even without consent of the shareholder. Under Louisiana law, the credit sale was complete when Owen Brennan and the corporation finalized the settlement agreement. *See Dunham*, 408 So. 2d at 896. Although he retained possession of the shares, the terms of the settlement agreement rebut the presumption of ownership and demonstrate the corporation is the owner of his shares.

Appellees attempt to introduce ambiguity through two other terms of the settlement agreement. First, the corporation agreed that "the value of [Owen Brennan's] stock will be maintained until all payments set forth herein are made" and warranted that any future stock issuance would be for fair market value. As noted, if the corporation purchased the shares, Owen Brennan's shares are now treasury shares held by the corporation. *See* La. R.S. 12:1X (defining treasury shares). Under Louisiana law, "[t]reasury shares are not assets". La. R.S. 12:1D (defining corporate assets). Appellees contend treasury shares are not assets because they have no value. *See Fultz v. Anzac Oil Corp.*, 240 F.2d 21, 22 n.5 (5th Cir. 1957) (noting treasury shares "cannot have in [*sic*] value in fact nor value for accounting purposes"). This provision does not create ambiguity. The second sentence in that provision clarifies that Brennan's, Inc., may not issue additional shares for less than market value. Such issuance would dilute the value of the 196 shares, held by Owen Brennan as security. Because security for the settlement agreement includes a *possibility* of Owen Brennan's returning to full ownership of the shares, this provision protects against dilution of his shares prior to full payment.

No. 13-30652

Second, Appellees point to § 3(a) of the settlement agreement as providing a pro-rata "call option" that is inconsistent with a full transfer of ownership. Again, Appellees attempt to create ambiguity where there is none. As security, the settlement agreement provided to Owen Brennan: first, a personal guarantee from Theodore Brennan; second, personal guarantees by his three children (including Tyrrell); third, a security interest in Owen Brennan's stock to the extent of outstanding payments; and fourth, a security interest in the corporation's intellectual property.

The pro-rata *release* is not a call provision placing the burden on the corporation to call shares in order to redeem them. Instead, the provision states: "[Owen Brennan] will release 3.5 shares of stock every quarter if all payments are timely made". That provision has no bearing on stock ownership.

Section 3(d) of the settlement agreement (tertiary security) further demonstrates that, although he retains possession, Owen Brennan holds the shares "as collateral" and is not the owner of them. Under that section of the agreement, his ownership status may be regained through court-ordered seizure of the shares and further legal action for recovery. (Indeed, in September 2012, prior to his 8 April 2013 written shareholders'-meeting request to the corporation, Owen Brennan instituted a state-court action to enforce the settlement agreement and accelerate all payments due. *See Brennan v. Brennan's, Inc.*, Civ. Dist. Ct. No. 12-9217 (Parish of Orleans, Louisiana). In that action, he refers to himself as a "creditor" seeking to enforce "a perfected security interest in [the corporation's shares]". *See id.*, Opp'n to Mot. for Leave to Intervene (13 Dec. 2012). His representation in that action is accurate. Owen Brennan is a creditor of Brennan's, Inc., with a security interest in the 196 shares he sold; and he retains possession of those shares as collateral.)

13

No. 13-30652

Because the settlement agreement is unambiguous, it is not necessary to address the district court's factual findings regarding the parties' intent. And, because the settlement agreement is an unambiguous credit sale of stock, the district court erred in ordering the corporation to recognize Owen Brennan's status as a shareholder.

Obviously, because Owen Brennan was not a shareholder in April 2013, he did not have a right to request, notice, or participate in a shareholders' meeting. Therefore, the court-ordered shareholders' meeting on 10 June 2013 was conducted improperly. None of the resolutions or elections voted on at that meeting is of any effect. As a result, Owen, Blake, and Clark Brennan were not validly elected to the positions of officer or director of the corporation, and Theodore Brennan and Tyrrell were not validly removed from those positions. Accordingly, the corporation's status and management prior to the 10 June shareholders' meeting remain in effect.

### B.

Appellants also contest the 7 June order granting a motion for reconsideration in order to set the special shareholders' meeting. Because the court-ordered meeting was improper due to Owen Brennan's participation, it is not necessary to address whether the court-ordered shareholders' meeting was scheduled in accordance with Louisiana law. Further, Theodore Brennan and Tyrrell claim the district court erred in that 7 June order by both requiring the corporation to recognize the Succession of James Brennan's right to vote and noting a potential issue regarding Tyrrell's shareholder status.

On the first point, the court held a consolidated hearing, ruling in both *Colbert v. Brennan* (No. 12-2442), and *Brennan v. Brennan* (No. 13-2491). It identified the applicable action for each order. The ruling regarding the succession was for *Colbert v. Brennan*. The court required Brennan's, Inc., not

No. 13-30652

Theodore Brennan or Tyrrell, to recognize the succession's right to vote. And, Appellants are not parties in *Colbert v. Brennan*.

Regarding the second point, the court's commenting on Tyrrell's shareholder status, Appellants failed to request specific relief. Nonetheless, the district court did not err by discussing Tyrrell's status. Although the issue was not before the court, the district court simply noted Tyrrell's contested status as a shareholder.

## III.

For the foregoing reasons, the 17 May 2013 order, including that Owen E. Brennan, Jr., is a shareholder, and the 7 June 2013 order are VACATED. As discussed, the officers and directors in place prior to the improper shareholders' meeting remain.